UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE,<br><br>　　　Plaintiff<br><br>V.<br><br>AETNA LIFE INSURANCE COMPANY, AND BANK OF AMERICA CORPORATION LONG TERM DISABILITY PLAN,<br><br>　　　Defendants | CIVIL ACTION NO. |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO PROCEED UNDER A PSEUDONYM AND TO IMPOUND THE RECORD OF THE PROCEEDINGS

This Memorandum is submitted in support of the Plaintiff, Jane Doe's motion: (1) for an order granting leave to proceed with her complaint under a pseudonym; and (2) for an order directing the Clerk to seal and impound the complaint filed with this Court, the Plaintiff's affidavit submitted in support of this motion, and all subsequent documents containing any medical and/or identifying information associated with this proceeding. In support of her Motion, the Plaintiff states that this suit, in which Plaintiff seeks recovery of disability benefits owed to her under a long term disability insurance plan, concerns the Plaintiff's medical condition, including her combined physical and mental health diagnoses. These issues reach into the utmost private areas of the Plaintiff's life and are at the cornerstone of the dispute in this case. Public disclosure of the Plaintiff's name and the pleadings and proceedings in this action, would have a severe, damaging impact on the

Plaintiff and her ongoing recovery, and will negatively impact the Plaintiff's ability to return to work, as is her current goal. As set forth below, numerous other courts have permitted plaintiffs to use a pseudonym and to seal the proceedings under comparable circumstances.

An affidavit executed by the Plaintiff providing her true name and the facts of this matter has been filed herewith. *See* Exhibit A, attached hereto. No prejudice to the Defendants can arise from proceeding under a pseudonym.

## FACTS

On or about March 30, 2011, Ms. Doe ceased working at Bank of America as a result of the symptoms of her combined conditions of Post-Traumatic Stress Disorder, Generalized Anxiety Disorder, Major Depression Recurrent, Gastroesophageal Reflux Disease, Impulse Control Disorder, Trichotillomania, Skin Picking, Panic Disorder, Social Phobia, EEG Disorder, Adrenal Disorder, Pituitary Disorder, Post-Concussive Disorder, Insomnia, Severe Circadian Phase Delay, Hypertension, Polycystic Ovarian Syndrome, , and Lower Extremity Paresthesia. (Affidavit, ¶¶ 3, 4). Subsequently, in September 2012, Ms. Doe filed a claim for long term disability benefits under her Bank of America long term disability plan, insured by Aetna Life Insurance Company. (Affidavit, ¶6). Ms. Doe filed her claim because she was unable to perform the duties of her own occupation or any full-time occupation. (Affidavit, ¶7).

On or about On December 13, 2012, Aetna denied Ms. Doe's claim for disability benefits on the basis that she was not disabled from performing the duties of her occupation. (Affidavit, ¶8). Because Ms. Doe believed that Aetna's assertion in this regard was incorrect, on June 6, 2013, with the assistance of her attorney, she appealed Aetna's decision to

terminate her benefits. (Affidavit, ¶9). On September 5, 2014, Aetna upheld its decision to deny her claim for benefits. (Affidavit, ¶10).

Because Ms. Doe believes that she is entitled to disability benefits as a result of her inability to perform the duties of her occupation, or any occupation on a full-time basis, Ms. Doe wishes to challenge Aetna's decision to deny her claim for disability benefits. (Affidavit, ¶11). However, her only option for doing so is to file a case in Federal Court under ERISA. (Affidavit, ¶11). However, the thought of doing so without the protection of a pseudonym, causes Ms. Doe significant concern. (Affidavit, ¶12-21, 29-34). As Ms. Doe stated in her Affidavit, attached at Exhibit A:

12. Given my combined medical conditions, I am very concerned about proceeding with litigation as my medical condition, including my mental health limitations, and corresponding disability will become a matter of public knowledge. Not only will this have a detrimental effect on my health, it will have a negative effect on my ability to obtain future employment, which is my goal.

13. Proceeding with this litigation without a pseudonym will negatively impact my physical and mental well-being.

14. As a result of the above mentioned mental illnesses, specifically Trichotillomania and Skin Picking, I cause physical harm to myself, where these conditions worsen substantially with increased stress and anxiety.

15. My primary care physician, Dr. John Jewett, has agreed that I physically harm myself as a result of my mental illnesses. *See* Exhibit A.

16. I believe that proceeding with my claims in Federal District Court under my legal name will cause an increase in my stress and anxiety levels, which will lead to increased physical harm and, likely, my need to withdraw my claims.

17. I do not believe I would be able to treat my medical conditions or mental health issues if I was forced to proceed under my legal name. I also worry that if I am unable to proceed under a pseudonym, my conditions will continue to deteriorate and become totally untreatable.

18. My concerns over loss of privacy have already resulted in a relapse in the progress I made treating my trichotillomania. My hair pulling and skin picking are currently worse than ever due to my current privacy concerns. Episodes can currently last hours and can include using metal objects to break skin until blood is drawn, scarring, hair loss, extreme physical pain, and picking wounded skin that is already bleeding or scarred.

19. My progress in treating my insomnia has also relapsed since my loss in privacy, resulting in frequent evenings with only a handful of hours of sleep. The limited sleep further exasperates the nerve pain in my lower legs, causing discomfort so painful it feels like electric shocks to my legs.

20. My family is concerned about my relapse in trichotillomania and skin picking. My mother needs to hold my hand while she is with me while I am out in public to prevent me from picking my skin or pulling my hair. My mother is concerned that I was doing so well in treating my condition, and that now I have relapsed.

*See* Exhibit A, ¶¶ 12-20.

## ARGUMENT

### I. COURTS HAVE DISCRETION TO PERMIT PLAINTIFFS TO PROCEED UNDER A PSEUDONYM WHEN THE PLAINTIFF DEMONSTRATES A NEED FOR CONFIDENTIALITY THAT DOES NOT INTERFERE WITH PUBLIC INTEREST IN DISCLOSURE.

Rule 10(a) of the Federal Rules of Civil Procedure requires individuals to disclose his or her identity to commence a lawsuit. It is undisputed that Courts have discretion to permit a plaintiff to proceed under a pseudonym. *See, e.g., Doe v. Bell Atlantic Business Systems, Inc.*, 162 F.R.D. 418 (D.Mass. 1995) (citing *Doe v. University of Rhode Island*, 1993 WL 667341 (D.R.I. 1993)) (citing *Doe v. Frank*, 951 F.2d 320 (11th Cir.1992), *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981)).

Several courts within the First Circuit have exercised their discretion to permit a plaintiff to use a pseudonym. *See e.g., Doe v. Travelers*, 167 F.3d 53 (1st Cir. 1999); *Doe v. Unum Life Ins. Co. of Am.*, 2014 WL 3893096 (D. Mass. Aug. 8, 2014); *Doe v. Raytheon*,

2002 WL 1608279 (D. Mass. July 19, 2002); *Doe v. University of Rhode Island*, 1993 WL 667341 (D.R.I. 1993); *Doe v. Blue Cross and Blue Shield of Rhode Island*, 794 F.Supp. 72, 73 (D.R.I.1992); *Doe v. Prudential Insurance Company of America*, et. al., 11-cv-11687-WGY (D.Mass. 2011).

Judge Gorton, in *Doe v. Bell Atlantic Business Systems*, outlined factors for courts to consider in exercising their discretion:

1) there is a presumption in favor of disclosure;

2) a party may rebut the presumption by showing that a need for confidentiality exists;

3) the court must balance the need for confidentiality against the public interest in disclosure.

*Doe v. Bell Atlantic Business Systems*, 162 F.R.D. at 420.

In particular, courts have allowed the use of fictitious names for parties who have shown that disclosure of their identities would subject them to harm or social stigmatization, or in situations where the disclosure involves matters of a sensitive or highly personal nature. *E.g.*, James Wm. Moore, et al., Moore's Federal Practice 10.02 (3d ed. 2004). In *Doe v. Bell Atlantic Business Systems*, for example, the court explained:

> Courts have allowed plaintiffs to proceed anonymously in cases involving social stigmatization, **real danger of physical harm**, or where the injury litigated against would occur as a result of the disclosure of plaintiff's identity. Economic harm or mere embarrassment are not sufficient to override the strong public interest in disclosure. Cases in which parties are allowed to proceed anonymously because of privacy interests often involve "abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases." (emphasis added).

*Doe v. Bell Atlantic Business Systems,* 162 F.R.D. at 420 (citing *Doe v. Blue Cross and Blue Shield of Rhode Island,* 794 F.Supp. 72, 74 (D.R.I.1992)) (citing *Doe v. Rostker,* 89 F.R.D.

5

158, 161 (N.D.Col.1981)).

## II. THIS IS AN EXCEPTIONAL CASE IN WHICH A COMPELLING NEED EXISTS TO PROTECT THE PLAINTIFF'S IMPORTANT PRIVACY INTERESTS.

### A. Ms. Doe's right to privacy far outweighs the public's interest in disclosure.

Ms. Doe has a substantial privacy right that far outweighs the public's interest in disclosure. She has always been a private person, working hard to maintain the confidentiality of her medical conditions, limiting the disclosure of her illnesses to her family, a few close friends, and her medical providers. (Affidavit, ¶23). This is due in part to the harassment Ms. Doe experienced in the workplace. As Ms. Doe testified: "On several occasions, at work and otherwise, I have experienced embarrassment, bullying, harassment, and a difference in treatment from others who have learned of my medical and mental illnesses. For example I have been told heartbreaking things such as "you are crazy" and "everyone knows there is something wrong with you." (Affidavit, ¶22). Ms. Doe is only thirty-one years old. (Affidavit, ¶1). She hopes to return to work in the future. (Affidavit, ¶¶24-25). However, if her diagnoses, particularly, her mental health diagnoses, are made public, her ability to maintain a career will be frustrated by the stereotypes and misconceptions related to an individual's ability to work while coping with physical and mental health conditions. (Affidavit, ¶25-27).

Current and prospective patients often conduct internet searches to find information regarding prospective employees. (Affidavit, ¶¶26-28). Complaints filed in Federal Court are easily discoverable via a Google search, while the actual details of the case, including substantive motions filed, can be obtained by registering for a PACER account. Boston is a small city; the professional community in Massachusetts of individuals who graduated from

Ivy league and also NESCAC colleges like Ms. Doe is even smaller. (Affidavit, ¶28). As Ms. Doe testified, "A professional who learns of my medical and mental illnesses could likely disclose this information to other parties in similar professional networks, resulting in further tarnishing of reputation and discrimination." (Affidavit, ¶28). After learning of her myriad of diagnoses from facts associated with this action, present and future employers, co-workers, and clients will likely doubt Ms. Doe's ability to handle her job responsibilities and Ms. Doe runs the risk of being prejudiced from obtaining future employment. (Affidavit, ¶¶26-29).

There is no doubt that the public disclosure of Ms. Doe's diagnosis risks professional stigmatization. *See Doe v. Bell Atlantic Business Systems Servs., Inc.*, *supra*, 162 F.R.D. at 420 (noting that the "most compelling situations" for use of fictitious names include matters where disclosure will lead to "stigmatization.") *See also*, Affidavit, ¶25. ("My professional reputation, and any hope I have of returning to work should my condition improve, will be negatively impacted by my continued association with my mental and medical illnesses."). Ms. Doe's decision to file this lawsuit in light of this risk has been a wrenching one, and this Motion is vital to protect her from the kind of harm courts have respected as overcoming the presumption of disclosure. (Affidavit, ¶¶ 30-31). As Ms. Doe stated: "If I am unable to proceed with my claims using a pseudonym, I will face a cycle of disability discrimination, economic hardship, relapse and physical harm, which are the issues that I am seeking to avoid by bringing this action. . . . I have been working incredibly hard to rebuild my life, so that I can rebuild my economic strength and autonomy. A continued loss of privacy would set me back enormously. I do not want to give-up on having a successful professional career because I am handicapped by illnesses worsened as a result of a loss of privacy." (Affidavit, ¶¶30, 33).

### B. Public disclosure of the facts of Ms. Doe's case will result in irreparable harm to Ms. Doe.

As noted above, a party may be permitted to proceed under a fictitious name if disclosure of her identity would expose her to injury. The damage to Ms. Doe should this Motion be denied is more than merely economic harm and/or embarrassment. Most significantly, Ms. Doe's health will likely be compromised should the details of her medical history and debilitating symptoms be made public. Additionally, Ms. Doe's Primary Care Physician also attested that Ms. Doe's fragile health would deteriorate and her recovery would be impaired (if not permanently prevented) should her identity and the sensitive nature of her medical conditions be revealed. *See* Affidavit, ¶15. *See also*, Exhibit B. As Ms. Doe stated in her Affidavit:

> 16. I believe that proceeding with my claims in Federal District Court under my legal name will cause an increase in my stress and anxiety levels, which will lead to increased physical harm and, likely, my need to withdraw my claims.
>
> 17. I do not believe I would be able to treat my medical conditions or mental health issues if I was forced to proceed under my legal name. I also worry that if I am unable to proceed under a pseudonym, my conditions will continue to deteriorate and become totally untreatable.
>
> 18. My concerns over loss of privacy have already resulted in a relapse in the progress I made treating my trichotillomania. My hair pulling and skin picking are currently worse than ever due to my current privacy concerns. Episodes can currently last hours and can include using metal objects to break skin until blood is drawn, scarring, hair loss, extreme physical pain, and picking wounded skin that is already bleeding or scarred.

(Affidavit, ¶¶16-18).

Ms. Doe has worked hard to build her career and continues work hard to overcome the functional limitations imposed by her illnesses so she may return to work. (Affidavit, ¶¶32-33). Aetna unfairly denied Ms. Doe's claim for disability benefits. (Affidavit, ¶¶9, 11). She

has already suffered that financial loss, and been forced to incur expenses appealing Aetna's denial. To compound that loss with the potential loss of her livelihood and damage to her health when the public, Ms. Doe's employers and her colleagues are made aware of her diagnoses, is unfair and unnecessary.

Moreover, while unfortunate, our society continues to be driven by outdated myths and stereotypes regarding mental illness. For example, studies have shown that society tends to characterize mental illness as a sign of personal weakness, or to believe that the mentally ill are less intelligent than others. *See* Mental Health, a Report of the Surgeon General, 1999, http://www.surgeongeneral.gov/library/mentalhealth/chapter1/sec1.html#roots_stigma; http://www.who.int/mediacentre/factsheets/fs218/en/print.html; Bagenstos, Samuel R. *Subordination, Stigma and "Disability"*, Virginia Law Review, April 2000, pps. 436- 445. Public knowledge of Ms. Doe's mental health conditions will damage her professional reputation and future employment opportunities.

The thought of proceeding without a pseudonym has already been a great stressor for Ms. Doe. (Affidavit, ¶16-20). Public disclosure of her diagnosis and the resulting loss of (or mere anticipation thereof) career opportunities causes, and will cause, Ms. Doe overwhelming stress. The fact that Ms. Doe's health is seriously at risk should her diagnosis be made public militates in favor of a finding that this case be sealed, and Ms. Doe be permitted to proceed under a pseudonym.

Unlike the plaintiffs in *Roe* or *Singer*, Ms. Doe has demonstrated her exceptional need for confidentiality – to prevent further damage to her health. *See Roe v. General Hospital Corp.*, 2011 WL 2342737 at *1 ("The plaintiff has advanced no reason to support her claim other than possible professional and economic harm."); *Singer*, 453 Mass. at 1013-114, 903

9

N.E.2d 191 at 193 ("The fact that, according to the petitioner, her case involves confidential financial and medical information does not suffice to overcome the presumption in favor of public proceedings.").

The harm to Ms. Doe's health should her private medical and personal history be made public cannot be understated. Ms. Doe's medical team has stressed that should Ms. Doe's identity and sensitive medical conditions be revealed, her medical condition will deteriorate and could impact Ms. Doe's ability to fully recover from her Condition. Ms. Doe's medical team has also stressed proceeding under a pseudonym is necessary in order to safeguard Ms. Doe's health and that a Protective Order is insufficient in protecting Ms. Doe from harm to her health. *See* Exhibit B. The knowledge that your personal medical history that you fight every day to overcome is public information, available for anyone to access, is understandably an incredible stress, especially for a private person who suffers from mental and physical conditions, who hopes to return to work in the future. However, Ms. Doe should not be required to risk her personal health in order to file this suit.

**C. The public interest weighs in favor of proceeding under seal.**

This is a case about Aetna's denial of disability benefits to an individual who believes, and whose doctors believe, she is entitled to disability benefits. There is a substantial public interest in ensuring that cases like Ms. Doe's are adjudicated and that the rights of policy holders who have been, or will become, sick or ill and then met with highly aggressive and unfair claim settlement practices, are represented fairly and without the risk of stigmatization. However, this goal cannot be achieved if litigants who will suffer from a deterioration of their illness without the protection of a pseudonym are chilled from ever approaching the courthouse steps.

Although any litigant runs the risk of public embarrassment by bringing their case and revealing sensitive facts in a public courtroom, the situation here is vastly different. First, Ms. Doe's medical condition is directly tied to the subject matter of the litigation – her disability and the disability benefits she is entitled to. Second, the public disclosure of Ms. Doe's diagnosis will cause a severe exacerbation of her symptoms and harm to Ms. Doe's health. (Affidavit, ¶¶16-20).

Third, Ms. Doe risks significant social stigmatization should this case become public. (Affidavit, ¶¶21-22). Specifically, Ms. Doe has conscientiously worked to keep her illness confidential; limiting knowledge of its existence to her family, a few close friends and her medical care providers. (Affidavit, ¶23). Should Ms. Doe's mental diagnoses become public knowledge, Ms. Doe risks significant stigmatization in both her community and her career. Despite the strides our society has made in the diagnosis and treatment of mental illness, individuals suffering from mental illness are nevertheless treated in a substandard manner. As the court stated in *Doe v. Provident*:

> To start, the public has an interest in preventing the stigmatization of litigants with mental illnesses. Further, plaintiff's identity should be protected in order to avoid deterring people with mental illnesses from suing to vindicate their rights. . . . The public has a strong interest in protecting plaintiff's identity. A ruling by this Court, denying plaintiff the use of a pseudonym, may deter other people who are suffering from mental illnesses from suing in order to vindicate their rights, merely because they fear that they will be stigmatized in their community if they are forced to bring suit under their true identity. Indeed, unscrupulous insurance companies may be encouraged to deny valid claims with the expectation that these individuals will not pursue their rights in court.

*Doe v. Provident*, 176 F.R.D. at 468.

Given the potential occupational losses from public disclosure of her diagnoses and the duration of this litigation, the stress caused by not allowing Ms. Doe to proceed under a

pseudonym will likely be relentless, seriously undermining her treatment and long-term symptom management.

### III. MS. DOE'S NEED FOR CONFIDENTIALITY FAR OUTWEIGHS THE PUBLIC'S INTEREST IN DISCLOSURE.

There is significant merit to the First Amendment right of public access to judicial proceedings. However, allowing Ms. Doe to proceed under a pseudonym will not interfere with the public's right to follow this proceeding. A decision can be issued in this case, while maintaining the confidentiality of the Plaintiff's identity. Motions can also be made public if identifying information is removed. Indeed, the public interest will be better served by allowing Plaintiff to proceed anonymously than by requiring her to choose between pursuing her claim and forfeiting her privacy or seeking to have all references to her medical condition sealed, as Ms. Doe's physicians have already noted that a Protective Order would not protect Ms. Doe from physical harm. *See* Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. KAN. L. REV. 195, 198-205 220 (2004) (noting harm to judicial system if plaintiffs forgo claims to preserve privacy due to ready electronic access to court filings). *See also Doe v. Provident*, 176 F.R.D. at 167-8 (citing public interest in maintaining confidentiality of plaintiff's name).

The issues in this case do not turn on the identity of the Plaintiff. The Plaintiff is not a public figure, which would strengthen the public's interest in knowing her identity. There are no illegal or ulterior motives in keeping her identity confidential; Ms. Doe merely seeks to protect her fragile health, livelihood, reputation, and medical information. Moreover, there is no evidence that permitting the Plaintiff to proceed anonymously would in any way prejudice or create an undue hardship since the parties are well aware of the Plaintiff's identity.

Accordingly, the Plaintiff's motion to proceed anonymously should be granted, as it has in numerous other disability insurance appeals. *See e.g., Doe v. Travelers*, 167 F.3d 53 (1st Cir. 1999); *Doe v. Unum Life Ins. Co.*, 2014 WL 3893096 (D.Mass. Aug. 8, 2014); *Radford Trust v. First Unum Life Insurance Company*, 321 F.Supp.2d 226 (D.Mass. 2004); *Doe v. Raytheon*, 2002 WL 1608279 (D.Mass. July 19, 2002); *Prudential Insurance Co. of America v. Doe*, 76 F.3d 206 (8th Cir. 1996); *Doe v. Provident*, 1997 WL 214796 (E.D.Pa 1997); *Doe v. Provident*, 936 F.Supp.302 (E.D.Pa. 1996); *Doe v. Kohn, Nast & Graf, P.C.*, 862 F.Supp. 1310 (E.D.Pa. 1994); *Doe v. General American Life Insurance Co.*, 815 F. Supp.1281 (E.D.Mo. 1993); *Doe v. Guardian Life Ins. Co. of America*, 145 F.R.D. 466 (N.D.Ill. 1992); *Doe v. Prudential Insurance Company of America*, et. al., 11-cv-11687-WGY (D.Mass. 2011).

## IV.   THE DEFENDANTS WILL NOT SUFFER ANY HARM IF THIS MOTION IS ALLOWED.

There will be no prejudice to the Defendants should this Motion be granted. Specifically, neither the Defendants' ability to defend themselves, or to prepare their case, will be affected by the granting of this Motion. *See Doe v. Provident*, 176 F.R.D. 464 at 469. Moreover, the cost of defending this action will not be increased should this Motion be granted. This is an ERISA case; the record before the Court has already been established through the internal appeals process. Further, permitting the Plaintiff to proceed under a pseudonym will not impair the Defendants' ability to conduct discovery or access information relevant to its defense – in fact, because this is an action for disability benefits administered and insured by Defendants, the Defendants already have in their possession all of the information necessary for it to litigate this matter. *Id. See also, Doe v. Smith*, 105 F.Supp.2d

40, 45 (E.D.N.Y. 1999) (finding that there was no prejudice to defendant where it retained right to depose any and all witnesses, obtain any and all documents, and had not limited defendant's rights or public access to a trial).

Furthermore, the Defendants have no legitimate claim that the Plaintiff's pursuit of this action under a pseudonym will further damage its reputation. *See e.g., E.W. v. New York Blood Center*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (where the court rejected the Defendant's claim of further damage to their reputation should the plaintiff be permitted to proceed anonymously). Unlike a private party, with interests similar to Ms. Doe's, Aetna is an international business, which is regularly sued for disability insurance benefits in this jurisdiction. *See e.g. McDonough v. Aetna Life Ins. Co.*, 2014 WL 690319 (D.Mass. Feb. 19, 2014); *Cannon v. Aetna Life Ins. Co.*, 2013 WL 5276555 (D.Mass. Sept. 17, 2013); *Semedo v. Boston Bldg. Service Employees Trust Fund Long Term Disability Plan*, 2013 WL 3805130 (D.Mass. July 19, 2013); *Downey v. Aetna Life Ins. Co. of Am.*, 2012 WL 787372 (D.Mass. March 8, 2012); *Kansky v. Coca-Cola Bottling Co. of New England*, 492 F.3d 54 (1st Cir. 2007). *Cf. also, E.W. v. New York Blood Center*, 213 F.R.D. at 112 ("Moreover, as the publication of magazine articles about NYBC attests, there has already been substantial press relating to the allegedly problematic blood screening procedures at NYBC. As such, any additional prejudice to the defendant's reputation or ability to operate merely by the pursuit of the action under a pseudonym appears minimal.").

Ms. Doe has courageously worked to overcome the limitations imposed by her illness, while recognizing that they will be lifelong challenges. (Affidavit, ¶32). Despite her illnesses, Ms. Doe is working as hard as she can to rebuild her life, and to one day return to work. (Affidavit, ¶33). She is only 31 years old. (Affidavit, ¶ 1). Permitting this matter to go forth

14

without protecting Ms. Doe's privacy will only result in harming Ms. Doe's health and negatively affect her future ability to return to work. (Affidavit, ¶16-20; 24-30).

## CONCLUSION

For the reasons stated above, Ms. Doe respectfully requests that this Court grant the Plaintiff leave to proceed with her complaint under a pseudonym and order the Clerk to impound and seal the complaint, affidavit accompanying this motion, and all pleadings, papers or orders, filed or issued in connection with these proceedings that contain information identifying the Plaintiff or from which her identity can be determined.

Date: December 23, 2014                    Respectfully submitted,

                                            Jane Doe
                                            By her attorney,

                                            _____
                                            Mala M. Rafik
                                            BBO No. 638075
                                            ROSENFELD RAFIK & SULLIVAN
                                            184 High Street, Suite 503
                                            Boston, MA 02110
                                            T: 617-723-7470
                                            F: 617-227-2843
                                            E: mmr@rosenfeld.com